UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,

                    Plaintiff,        Criminal Action
                                      No. 19-10312-LTS
V.

                                      January 9, 2020
MATTHEW HAVILAND,                     1:33 p.m.

                    Defendant.
_____


TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE LEO T. SOROKIN

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA   02210


DEBRA M. JOYCE, RMR, CRR, FCRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5204
Boston, MA   02210
joycedebra@gmail.com

APPEARANCES:

FOR THE GOVERNMENT:

WILLIAM F. BLOOMER, ESQ.
United States Attorney's Office MA
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3644

FOR THE DEFENDANT:

SCOTT LAUER, ESQ.
Federal Public Defender Office
District of Massachusetts
51 Sleeper Street
5th Floor
Boston, MA 02210
617-223-8061

P R O C E E D I N G S

(The following proceedings were held in open court before the Honorable Leo T. Sorokin, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on January 9, 2020.

The defendant, Matthew Haviland, is present with counsel.  The Assistant U.S. Attorney is present.)

THE CLERK:  All rise.

The United States District Court for the District of Massachusetts is now in session, the Honorable Leo T. Sorokin presiding.

Today is January 9th, the case of United States v. Matthew Haviland.

Would counsel please state your name for the record.

MR. BLOOMER:  Good afternoon, your Honor.  William Bloomer on behalf of the United States.

THE COURT:  Good afternoon, Mr. Bloomer.

MR. LAUER:  Good afternoon.  Scott Lauer on behalf of Mr. Haviland.

THE COURT:  Good afternoon.

Good afternoon, Mr. Haviland.

So, Mr. Haviland, we're here because Mr. Lauer has filed a motion to withdraw.

I've allowed what you requested, Mr. Bloomer.

MR. BLOOMER:  Yes.

THE COURT:  So I guess we should have an *ex parte* hearing, but I don't know --

MR. LAUER:  I don't actually think that any attorney-client issues are --

THE COURT:  I assumed it -- I didn't understand it until I got the filing from Mr. Bloomer, and I assume that's the reason?

MR. LAUER:  It is.

THE COURT:  So I don't -- I guess the question is, Mr. Haviland, do you object?

You've talked to Mr. Haviland about these issues?

MR. LAUER:  I have explained to Mr. Haviland both the nature of what transpired with the government and the conflict that arose in my representation.

THE COURT:  Right.  And when you say that, that is the information the government filed under seal.

MR. LAUER:  Yes.

THE COURT:  Then I -- so, Mr. Haviland, do you object to Mr. Lauer withdrawing under those circumstances?

THE DEFENDANT:  I'm disappointed, but I understand.

THE COURT:  Okay.  So I -- I think it's just obvious. I mean, that there's a conflict for -- do either of you think I need to put anything on the record with respect to why there's a conflict?

MR. BLOOMER:  I don't believe so.  I think it's obvious.

THE COURT:  I would say the conflict the federal defender has is apparent by the filing made by the government, and I agree that it's a conflict and I understand that, as I understand from reading the government's filing, the Defender's is not making a choice between two clients but is asking seeking to withdraw from both.

MR. LAUER:  Correct.

THE COURT:  I think that's both correct from a conflict perspective and correct probably just to avoid the appearance of looking like you're favoring a client over a different client.  So I'm going to -- I'm going to allow the motion.

That leads to, like, one other issue, and -- which is, so, ordinarily, Mr. Haviland, the way we -- what I would do in this circumstance when a lawyer withdraws, you're entitled to a new appointed lawyer, and what we have is a duty day system.  So the day you were arrested, the reason you had Mr. Lauer is every day when there's a duty day, there's two lawyers on duty, a lawyer from the Federal Defender's, that must have been Mr. Lauer that day and that's why you got him, and a private lawyer on the CJA panel.  And the -- sometimes the CJA lawyer, private lawyer, gets one or two cases.  They're paid at the court's rates.  Only lawyers who are qualified can get it.  And

ordinarily if I allow someone to obtain a new lawyer -- and I'm definitely allowing you to have a new lawyer, this isn't your fault in the sense of it's not like you were difficult with Mr. Lauer or something.  I'm going to appoint another lawyer. I would just have the CJA duty lawyer take the case.  It couldn't be the lawyer, Mr. Lauer's office on duty today because they're in the Defender's.  And I had Mr. Grimaldi, who is the lawyer who is here today at my request, come to the hearing.

After I scheduled this and had Ms. Simeone notify Mr. Grimaldi, I went back to think about this case a little more to remember, to look over back why I continued your sentencing.

And the reason I continued your sentencing was because at the time I was concerned that there were serious mental health issues from which you were suffering that required an evaluation.  And if I recall correctly, the position advocated by you and your lawyer was to be released right away, and I didn't think there was sufficient understanding of the mental health issues to do that.  And the government's position, if I followed that, was a longer sentence, but still wasn't putting you being out of prison that far away given the time you had already served, given credit for good time.  And I wanted to see what -- I wanted the mental health evaluation for -- to be sure that the appropriate things were in place and because your

mental health condition had bearing on how I evaluated what sentence to impose and what I thought of risk of future harm and the like.

So that is a long way of saying that I want to pause, and I did this -- I went back over this just in the last little bit, and your case -- there are -- I have the authority to pick from anybody from the list.  The preference and my preference and the court's preference is to pick the duty attorney always -- usually, not always, but usually, just because it's the proper way to do it and it's a fairer system, but your case has particular mental health issues.  And I just want to think about whether there's -- whether there would be somebody on the list who's particularly experienced with mental health issues that I might want to select rather than the duty attorney.

So that, first of all, if I do that, is no -- I've had Mr. Grimaldi in front of me in a number of cases and he's done an excellent job, and in some of those cases there have been mental health issues, I believe, of various types.  So he's someone I know who is familiar with that, and -- but I just want to pause and think -- that's -- and to be frank with all of you, what I read in the government's filing confirmed to some degree that there's mental health issues here and that need to be evaluated.  It has other implications, the government's filing as well, but it certainly has that.

So that's a long way of saying I'm going to allow your

motion, Mr. Lauer, but I'm not actually allowing it immediately. I'm not allowing it until I appoint the new lawyer, and though my preference -- and I'm hoping to resolve that in my mind no later than tomorrow and probably today because -- but until I do that, you're the lawyer just so it's clear he has a lawyer and the like, nothing is going to happen in the next -- I think in the next time, but you have -- and he has someone to call if he needs something. I either will resolve this by having Ms. Simeone contact you, Mr. Grimaldi, today or I will resolve this by looking over the list, and if I think there's somebody who has sort of special mental health skills, then I might -- not skills, but particular experience -- I think that Mr. Grimaldi would be fine, I think it would be sufficient under the Constitution to appoint anybody on the list -- but I'm just thinking about doing that.

So I want to think about that, and I'll take care of that no later than tomorrow but possibly today. And so it will cause a little bit of delay because Mr. Grimaldi can meet with you right now and if I don't appoint Mr. Grimaldi, you may not get to meet with an attorney today, but, rest assured, there will be a lawyer for you promptly and that will happen.

In terms of the sentencing on January 27th, I'm not going to change the date at the moment, but what I think, Mr. Bloomer, I might ask you to do once there's on the docket a new lawyer, just talk to the new lawyer about what the two of

you think is reasonable in terms of -- I assume this new lawyer is not going to want to go forward on January 27th, they're going to want to meet with Mr. Haviland, going to have to read all the papers and so, like -- I don't want to wait forever but a reasonable period of time, and I don't know where things stand, Mr. Lauer, with an evaluation.

MR. LAUER:  I think I'm going to have to work with successor counsel.

THE COURT:  But it hasn't happened.

MR. LAUER:  At the present time, it has not.  It was supposed to take place next week, and that will need to be cancelled now.

THE COURT:  So I think before you cancel it, unless it's, like, Monday, maybe you should give successor counsel the chance whether -- to talk to them about it whether they wish to go forward with it or not or pick a different person or not do it or whatever it is.  They might like the person you picked because --

MR. LAUER:  They might, but I doubt very much that the administrative aspects --

THE COURT:  Well, I'm sure the Defender's office won't pay for it --

MR. LAUER:  That's the problem.

THE COURT:  Right.  But if it's -- I would -- that person -- you can tell that lawyer, whether it's Mr. Grimaldi

or someone else, that I will approve a voucher, a request to -- they'd have to make it to me, but if it's a person who charges within the CJA rates and is a reasonable person, you know, which I assume would -- the Defender's are pretty much doing the same thing even though you're not subject to those rate guidelines, I would certainly approve it.  And I can't imagine that Ms. Conrad is approving $1,000 an hour for experts.

MR. LAUER:  No, I don't think the rate would be anywhere near that.

I will have a conversation with successor counsel.

THE COURT:  So they could do that, and ordinarily they'd need permission in advance.  If they wanted to keep the date, wanted to keep the person, they can get it in on time and I'll act on it within 24 hours.  Also, if it's a reasonable -- given it's a person the Defender's approved, if the rate is not -- as long as the rate's within the suggested rates we have, then I'm likely to just approve it and -- if the total isn't crazy and it's reasonable.  So that administrative shift doesn't have to be the reason it gets put off.

MR. LAUER:  Understood.

THE COURT:  Okay.

And so, Mr. Bloomer, if you would just talk to the person once they're in and then one of you or both of you can file a motion to -- if everyone is ready to go forward on the 27th, I'm prepared to go forward on the 27th, but if people

want a bit more time, I'm open to that and make a suggestion or what have you.

MR. BLOOMER:  All right.  Yes, your Honor.

THE COURT:  And I don't know whether -- from your perspective, does any of this occasion a reason that the government would want more time?

MR. BLOOMER:  Well, it depends on how things develop over the next few days.  I don't think so, but, you know --

THE COURT:  Can't rule it out.

MR. BLOOMER:  Can't predict.

THE COURT:  Okay, fine.  So -- all right.

And so, Mr. Grimaldi, so you understand, this is not -- I'm very pleased with the work you've had in front of me in retained cases I think and in appointed cases, you've had trials, they've all been fine.  I don't want you to think -- it has nothing to do with you, just when I realized that really what it was it made me think about should I -- is that something that I want to think about.

MR. GRIMALDI:  I didn't take it that way, your Honor.

THE COURT:  Okay, fine.

We're adjourned.  Thank you very much.

THE CLERK:  This matter is adjourned.

(Court adjourned at 1:44 p.m.)

- - - - - - - - - - - -

CERTIFICATION

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.


/s/Debra M. Joyce                    January 27, 2020
Debra M. Joyce, RMR, CRR, FCRR       Date
Official Court Reporter